UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 1/15/2019

RACHAEL SOLOMON, *individually and on behalf of all others similarly situated*,

Plaintiff,

– against –

THE SOCIAL EDGE NETWORK, INC., *a Delaware company*; JAY KUO, *in his official and individual capacities*; and LORENZO THIONE, *in his official and individual capacities*,

Defendants.

**ORDER**

18 Civ. 1571 (ER)

Ramos, D.J.:

Rachael Solomon brought this action against her former employer, the Social Edge Network, Inc., and its cofounders Jay Kuo and Lorenzo Thione, for gender discrimination under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); denial of equal pay for equal work under the Fair Labor Standards Act of 1938 ("FLSA") as amended by the Equal Pay Act of 1963, and the New York Labor Law ("NYLL"); retaliation under Title VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL; failure to pay final wages under the NYLL; and aiding and abetting violations of the NYSHRL and NYCHRL. Doc. 1. Sandie Cheng, another former employee, filed a consent to opt into this lawsuit. Doc. 17. Pending before the Court is the parties' application for court approval of the Confidential Settlement Agreement and General Release ("Agreement") between Solomon, Cheng, and the Social Edge. Doc. 20.

In this Circuit, parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake*

*House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). The parties therefore must satisfy the Court that their agreement is "fair and reasonable." *Beckert v. Ronirubinov*, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015). "In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Id.* (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), *cited with approval in Cheeks*, 796 F.3d at 205–06, the court rejected a proposed FLSA settlement because the parties did not provide the basis for the recovery figure or documentation supporting the attorneys' fees, and the settlement included impermissible confidentiality provisions and overbroad releases. *Id.* at 176–182. The proposed Agreement here is deficient for the same reasons as in *Nights of Cabiria*.

First, the parties have specified the division of the total settlement amount of $67,000, with Solomon receiving $44,666.67 (comprising $14,888.89 for lost wages, $14,888.89 for emotional distress, and $14,888.89 for attorneys' fees) and Cheng receiving $22,333.33 (comprising $7,444.45 for lost wages, $7,444.44 for emotional distress, and $7,444.44 for attorneys' fees). Agreement ¶ 1(a)–(b). However, "[t]he parties have not 'provide[d] the Court with each party's estimate of the number of hours worked or the applicable wage'" of each

2

Plaintiff.[1] *Nights of Cabiria*, 96 F. Supp. 3d at 176 (second alteration in original) (quoting *Mamani v. Licetti*, No. 13 Civ. 7002 (KMW) (JCF), 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014)). The Court thus has no sense of how the parties arrived at the settlement figures. *Id.* at 176–77. "In the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable. It may be that the proposed settlement would merit approval in light of a more complete record. As it stands, however, the current submission is inadequate." *Id.* at 177.

Similarly, the parties have provided no documentation to support the reasonableness of the award of attorneys' fees. "In this circuit, a proper fee request 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" *Id.* at 181 (quoting *Wolinsky*, 900 F. Supp. 2d at 336). "While there is a strong presumption that the 'lodestar' amount—that is, the number of attorney hours reasonably expended times a reasonable hourly rate—represents a reasonable fee, the court may adjust the fee award upward or downward based on other considerations." *Wolinsky*, 900 F. Supp. 2d at 336. Additionally, "[e]xcept in extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount."[2] *Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015). Even where a fee award represents one-third of the recovery, courts compare it to the lodestar to assess its reasonableness. *See Beckert*, 2015 WL 8773460, at *2–3; *see also*

---

[1] The Complaint only alleges that Solomon, after she resigned as an employee, briefly worked as a contractor for $25 per hour. Compl. ¶¶ 59–60.

[2] "[W]hen assessing the reasonableness of an attorney's fee on the basis of its percentage of the settlement, it is fairer to look to the percentage of the settlement *net of costs*." *Montalvo v. Arkar Inc.*, No. 17 Civ. 6693 (AJN), 2018 WL 2186415, at *2 (S.D.N.Y. May 10, 2018) (emphasis added).

*Montalvo v. Arkar Inc.*, No. 17 Civ. 6693 (AJN), 2018 WL 2186415, at *2 (S.D.N.Y. May 10, 2018) (using the lodestar as a "cross check"). However, the present submission includes no billing records documenting the fees and no calculation of the lodestar. *See Nights of Cabiria*, 96 F. Supp. 3d at 181–82. "It may be that counsel's fee request is entirely commensurate with the amount of time that the lawyers spent on this case. But such determinations require evidence, and plaintiff's counsel has provided none. The fee request therefore cannot be approved." *Id.* at 182.

Next, the Agreement includes "a battery of highly restrictive confidentiality provisions" that "are in strong tension with the remedial purposes of the FLSA." *Id.* at 177. The Agreement requires Solomon and Cheng to keep the existence and terms of the Agreement "in strict confidence," "not to disclose such information to any current or former employee of the [Social Edge]," "not [to] make any negative or disparaging statements or comments about the [Social Edge]" or its employees, and to pay liquidated damages of $5,000 for any breach of confidentiality. Agreement ¶¶ 6–7. "[A] non-disclosure agreement in an FLSA settlement, even when the settlement papers are publically available on the Court's docket, is 'contrary to well-established public policy' because it inhibits one of the FLSA's primary goals—to ensure 'that all workers are aware of their rights.'" *Nights of Cabiria*, 96 F. Supp. 3d at 179–80 (quoting *Guareno v. Vincent Perito, Inc.*, No. 14 Civ. 1635, 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014)). "The Court accordingly will not approve the proposed settlement, at least on the present record, unless the confidentiality, non-disclosure, and non-disparagement provisions . . . , as well as the liquidated damages provision, are removed or narrowly tailored to allow plaintiffs to discuss their litigation of this case." *Id.* at 181.

4

Furthermore, "the language of the proposed releases is far too sweeping to be 'fair and reasonable,'" because "[t]hey purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Id.* By way of example (as the Agreement contains multiple releases with similarly overbroad language), the Agreement requires Solomon and Cheng to waive "any and all claims and rights . . . based on *any act, event, or omission* occurring before the execution of this Agreement" and "any and all claims or demands arising under . . . *any other federal, state or local laws or regulations* as well as any other claims under *any other tort, contractual, common law, or statutory theory* that Solomon or Cheng may have had or now has up to the date of this Agreement." Agreement ¶ 2 (emphases added). Moreover, the Agreement requires Solomon and Cheng to release any such claims against not only the Social Edge, but also a separate entity called TriNet HR III Inc., whose relationship to the allegations in this suit is entirely unexplained. *Id.* The Court will not approve an overbroad release that purports to "erase all liability whatsoever"; a proper release in a FLSA case can only "waive[] claims relating to the existing suit."[3] *Nights of Cabiria*, 96 F. Supp. 3d at 181.

In addition, the Agreement purports to bar Solomon and Cheng from working for or applying to work for the Social Edge, Agreement ¶ 8, which is a "highly restrictive provision[] in 'strong tension with the remedial purposes of the FLSA,'" *Cruz v. Relay Delivery, Inc.*, No. 17 Civ. 7475 (JLC), 2018 WL 4203720, at *1 (S.D.N.Y. Sept. 4, 2018) (quoting *Baikin v. Leader Sheet Metal, Inc.*, No. 16 Civ. 8194 (ER), 2017 WL 1025991, at *1 (S.D.N.Y. Mar. 13, 2017)).

---

[3] The Court notes that limiting Plaintiffs' release to "any and all claims arising from or relating to her employment," as some of the release language purports to do, would not necessarily cure the problem. Agreement ¶ 2. A proper release cannot "extend[] beyond the *claims at issue in this action*." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (emphasis added).

"[C]ourts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." *Id.* (quoting *Burgos v. Ne. Logistics, Inc.*, No. 15 Civ. 6840 (CBA) (CLP), 2018 WL 2376481, at *7 (E.D.N.Y. Apr. 26, 2018), *report and recommendation adopted*, 2018 WL 2376300 (E.D.N.Y. May 24, 2018)).

Accordingly, the Court will not approve the settlement unless the parties correct the deficiencies identified above. The parties may proceed in one of the following ways:

1. Submit a revised agreement to the Court on or before **February 13, 2019**. The submission shall provide the basis for the recovery figures and documentation supporting the attorneys' fees, and the revised agreement shall remove or tailor the confidentiality, release, and reemployment provisions as described in this Order.

2. File a joint letter on or before **February 13, 2019**, that indicates the parties' intention to abandon settlement and continue to trial, at which point the Court will reopen the case and set down a date for a pre-trial conference.

3. Stipulate to dismissal of the case *without* prejudice, which the Court need not approve under current Second Circuit case law. *See Cheeks*, 796 F.3d at 201 n.2.

It is SO ORDERED.

Dated:   January 14, 2019
         New York, New York

_____
Edgardo Ramos, U.S.D.J.